oral argument not to exceed 15 minutes per side and Mr. Wolfe for the appellant when Good morning, your honors. May it please the court, Stephen Wolfe on behalf of the appellant, Joy Edwards and request to reserve three minutes for rebuttal. This is a relatively novel case based on its application. There are a number of issues that apply to each of the assignments of the intent and retaliatory intent of Ms. Edwards. We know that there are three elements to be addressed, whether there is knowing action with intent to retaliate, whether there is harm, and whether there is motivation for action. Motivation for the action was cooperation with law enforcement. Now, what has been an issue throughout this entire process was whether there is retaliatory intent by Ms. Edwards when she was posting these things on Facebook. And I think that we need to dive a little deeper into that from the beginning because the terms post, repost, share, like have been used interchangeably throughout this entire process. And we attempted Are you asserting a factual or a legal? Because as all of that are fact, it sounds to me factual, which was decided by a fact finder. I think they're a hybrid because... What's the hybrid? Explain that. The hybrid is the fact that these all go towards the sufficiency argument. So you're making a sufficiency argument right now? Correct. Yes. And you're saying there was insufficient evidence of retaliatory intent in essence. Retaliatory intent and causation, they all sort of go together in one. And that's why I wanted to discuss the difference between a post, a repost, a share, or a like. Obviously, Ms. Edwards can't like, share, or repost something that hasn't already been posted. There would be no way to do that. And if... You can do that with retaliatory intent, right? You can repost or share. Yes, you could repost or share with retaliatory intent. You could also do it... If I post something and I had seven people that paid attention to me, so it really would have no effect. But you have 2,000 and you want to get someone killed, for example, you could repost it for reasons that would be with retaliatory intent. Yes, it could be for retaliatory intent. Okay. But that doesn't mean that the only purpose for sharing something would be for retaliatory intent. Are you talking about the sufficiency of evidence with respect to intent? This specifically would be with respect to causation. So you're not arguing today with respect to sufficient evidence with respect to whether there was intent. We're assuming there was an intent to whatever the intent requirement is under the statute. I wouldn't concede that there was intent. Hard for you to argue it when you didn't argue it below, though, right? I would argue... I wouldn't concede that it wasn't argued below. It was discussed below. Was it in your district court? It was discussed. It was discussed. It might have been in passing. It was not discussed as much as the causation element, though. And when it comes to the causation element... It looks like there's intent because... It looks like a jury could find intent because of the very nature of the words. Well, and what we would argue is that that doesn't... The jury... No, I'm not saying I think it's enough for the jury, doesn't it? Sure. There could be intent found. It could be for a number of other reasons. But when the government... We don't decide that usually in our system. What's that? A jury usually gets to decide... A properly instructed jury gets to decide that in our system. I understand, Your Honor. Now you're just talking about whether she was harmed and a jury couldn't find harm from these kinds of things being put on... This wouldn't be a harm. This would be a causation. Whether these posts caused any harm to DB. And what's the argument that... I have a certain sympathy or a certain puzzlement as to prosecuting somebody for putting stuff on the web that is hostile to someone else. Because there's all kinds of millions of stuff like that in a sense, in a general sense, on the internet. People may think, well, gee, I ought to be able to do that. But if you look at what actually happened here, I'm having a hard time seeing that a jury could not, a reasonable jury could not find that harm was caused by these posts. The argument is that harm was not caused by these posts, by her posts. Her posts, yeah. The harm was caused by the people that originally posted them. Because she was not the one that originally posted these. She liked them. What's that? Excuse me, I'm sorry, Your Honor. All this business about the WD-40 and all of that, that's all reposting of somebody else? Other people had posted pictures, posted comments, posted things that she then shared, reposted, or liked. And when the government... She would comment on them on occasion. Sometimes she just shared them without comment. What's that? Doesn't that make it different from the original post? Yes, it can make it different from the original post. I'm asking if it didn't hear make it different from the original post. No, I don't believe so, because the original post is what caused the harm. The original post was, the government argues that the dissemination is what causes the harm. These had already been disseminated. Additionally, he had already testified. I don't know. They were arguing the dissemination, for example, of the pictures with what Judge Batchelder just pointed out. The addition caused the harm. In the government's brief on page 19, it says the creation of the images did not imperil DB. Their dissemination did. So the dissemination had already occurred. So what they mean, as I understood it, you can correct me or they can correct me, is I thought the dissemination with the this is a snitch or the vulgarities to do to the snitch is what they were alleging. And I thought she put that, the WD-40, the this is a snitch, all of that. Can you answer my, I'm sorry to interrupt you. Yes. My first question is, did she do that? She did that. Okay. And so I thought the harm, the causation was that caused the harm because now you take a picture, you add that, you disseminate it. Now you're saying, you take my picture and you say this judge is a moron. Okay. Now you say this judge is a snitch, get him, or WD-40 him. I think it's different. Well, and the content of the, the content of her commentary on these didn't advocate for any violence, didn't say who he was, didn't say anything. These had already been disseminated by other people. What was the commentary on them when they were disseminated in the first instance? They had the, one of them was a picture of him on a stop snitching website or a stop snitching Facebook page. There were ones that were unflattering of him. There were ones that had him, I believe, wearing a sign with a stop sign that said stop snitching. He, the fact that he had been labeled a snitch was not originally done by Ms. Edwards. The original ones didn't say he snitched on my brothers and he's lying. No, they did not say that. The original ones did not say who he had snitched on. Does that make sort of a quantitative or a qualitative difference in, in the, in the content of what's being disseminated? Well, what, what we would argue is that the fact that he was, the fact that he had already been outed as a snitch was done by somebody other than Ms. Edwards. Isn't the question in front of us whether a reasonable fact finder, this is why I asked you, is this a factual question? A reasonable fact finder, when viewing the evidence in light most favorable to the government, could find that this caused the harm? Yes. And you're saying that the comment Judge Batchelder just gave, a reasonable fact finder. So you have a picture saying stop snitch, stop the snitch, stop snitching. But then someone says in my community, hey, he snitched on my brothers. You're saying we couldn't find that caused harm to him? It would be hard to differentiate the harm that had already been caused. Really just a generic versus a, he snitched on my brothers? Because someone in Australia seeing the stop snitching would know immediately that he snitched in, where was this, Steubenville? Steubenville, Your Honor. On somebody in Steubenville, in a situation where somebody in Steubenville seeing the specifics of it might say, whoa, there's no difference between the guy in Australia seeing it? To look at it logically, Your Honor, there would be no way for the person in Australia to have created and shared this that Ms. Edwards would have found out about. Ms. Edwards found out about these because they were... I'm not talking about being able to disseminate, but you're saying that there's no causation here of harm because of the additions she made to the pictures. And I'm just saying when the first picture goes up and the guy in Australia sees it, it doesn't mean a darn thing to him, although he doesn't like snitchers, which we know because he visits the website. But the guy in Steubenville who visits the website and sees this guy with the addition of, he snitched on my brothers, suddenly has very specific information. In that hypothetical, yes, but these pictures would have also been created by somebody in Steubenville. But that hypothetical exists in this case. It isn't exactly that. If someone generically created a picture, it doesn't matter where, she then disseminates it. And the question for us, as Judge Rogers said, isn't whether in the first instance we would find this, it's whether when we view the evidence in the light most favorable to the government, a reasonable fact finder could find causation. It was not created in a vacuum, though. It was created in Steubenville. This had been disseminated in Steubenville prior to Ms. Edwards. That's how Ms. Edwards found it. So everybody in Steubenville, you're saying, recognized his picture anyway and there was no need for any additional detail because everybody knew exactly who he was and who he snitched on. With the exception of one person that commented, who is this, to which Ms. Edwards admittedly responded, this is the guy that snitched on my brothers. Wait, so if this is a factual argument, that can all be presented to the fact finder and the fact finder can decide. If this is a legal argument, what you're saying is once it's disseminated, anything anyone does thereafter can never cause harm. I'm not saying nothing can. If she would have said this is, and given D.B.'s name, D.B. works here, D.B. lives in Steubenville, anything like that, those could have caused separate harm. I thought you just said that it all came from Steubenville anyway, so what's the problem? I'm saying it could have caused additional harm. I'm not saying that it necessarily would have. I'm just saying that her commentary did not cause any additional harm that hadn't already occurred. Is that for a fact finder to decide? It could be argued that, yes, your honor. Okay, thank you, counsel. Thank you. May it please the court, Alexis Zuhairi on behalf of the United States. I suppose I'll start and probably end with the sufficiency claim. As Judge Rogers, as you pointed out, with respect to intent, this argument has been waived. Defense counsel raised causation and harm arguments below, but did not raise intent. Did they waive their as-applied First Amendment challenge? Absolutely. Absolutely, your honor. There is no mention of a substantive First Amendment challenge in their brief or in their reply brief. And so they had it below and waived it on appeal? That's correct, your honor. Could I ask a question? I think the issues are fairly clear on that. I was a little bit troubled by this case. It was hard for me to put the troubling aspect under a legal characteristic. But I guess I'm a little troubled by the idea that this is, what is the actual crime? Threatening a witness? It's witness retaliation. So you retaliate against a witness. It can't be retaliation against a witness, could it, if, let's say, the brother or sister of a criminal puts on a webpage that one of the witnesses against their brother was lying, trying to improve the reputation of the convicted brother. That would be all right. It wouldn't be retaliation in that sense. I think that would be a very difficult case to prove that someone actually acted with the intent to retaliate and also caused harm. So it's the caused harm that would keep that. That could be intent to retaliate. Because the government could argue that when you did that, you didn't really believe that the witness was lying. You were just trying to retaliate against the witness by calling him a liar. We could argue that. But I think that intent to retaliate is a high burden, particularly where there's only circumstantial evidence. But again, in that scenario, we have the harm requirement, too, that Congress included. Right, but somebody could be called a liar and say that hurt me in my community and allege that they were tossed out of their job, which required truth-telling by this eminent brother of the victim saying that I'm a liar. It sort of, in a way, looks like that here. That's what's troubling about it. Because snitching is sort of a coarse way of saying you're testifying for the wrong reason. It shouldn't be believed. I understand Your Honor's concerns. That's not this case. In this case, we have the defendant broadcasting a picture of the CI including loaded language like snitch in a small community like Steubenville. The idea is that that activity compared to just saying this person was not telling the truth for these various persuasive reasons is what turns it into is criminal because it's more likely to be intended in order to cause harm than to vindicate the brother? I think that we have more evidence here. I mean, we have additional evidence that some of the language used, for example, the WD-40 comment that this Court has already referenced, the FU comment, those are both in exhibit... That's like soliciting violence. It's close to that. I'm not sure if it actually is that. But certainly the District Court, in its order, as the fact finder here, did note that it interpreted those comments as encouraging or inviting harm or intimidation on the CI. And that, of course... That kind of harm occurred. Or maybe you're saying that the person was afraid of that kind of harm. I think that's exactly what the record in this case shows. The CI took the stand and actually told the fact finder, the District Court in this instance, how these comments harmed him, how they affected his life. And he specifically testified that he did not receive a significant amount of negative attention until these posts were made by Ms. Edwards. Had he already moved when these posts were made? He had already moved. He was living in Whitehall at the time. But he testified that he regularly visited Steubenville. He has four children who reside there. And he testified that after these posts were made, he couldn't walk down the street without getting recognized as a snitch. And he felt scared for his family's safety and for his own safety. Were there challenges to the jury instructions? No, Your Honor. It was a bench trial. Oh, it was a judge trial. I'm sorry. I'll take that question back. And I just add one more point, which is, you know, protecting witnesses is vitally important to the United States. And we can't properly administer justice if our witnesses are scared to testify. And so to the extent Your Honor is concerned, this case doesn't present, I think, any of Your Honor's concerns. And certainly under sufficiency... Those kind of cases could be distinguished either by a knowledgeable judge holding a judge trial or by jury instructions in the future. I'm sorry, I couldn't hear your answer. Those kinds of concerns that I'm raising could be addressed, you're suggesting, by, in a jury trial, accurate, limited jury instructions. Or in a judge trial, the judge being familiar with the limits... Absolutely. Absolutely. Thank you. If there are no further questions, we ask that the Court affirm. Thank you, Counsel. Your Honors, I didn't have an opportunity to get into the vagueness arguments while I was up there previously. I think that... You waived the as-applied, right? By not presenting it here. Yes, Your Honor. As far as the vagueness, one of the elements is that invites arbitration. And I think that's a good point. It would be really up on what we're doing here. We would say that inasmuch as that hasn't been addressed at all up until now, this is hardly proper rebuttal. Certainly, Your Honor. Does the... Do Your Honors have any further questions at this point? I do not. Thank you, Counsel. Mr. Wolf, you are appointed. Thank you for your representation. Thank you. Thank you. We may recess the Court. This Honorable Court is now adjourned.